JUDITH A. LONNQUIST (WSBA #06421)
Law Offices of Judith A. Lonnquist, P.S
        1218 Third Avenue, Suite 1500
        Seattle, WA 98101
        Telephone: 206.622.2086
        Fax:  206.233.9165
        Email: LOJAL@aol.com


MARY DRYOVAGE, (CA SBN 112551)
Law Offices of Mary Dryovage
        600 Harrison Street, Suite 120,
        San Francisco, CA 94107
        Telephone: 415 593-0095
        Fax. 415 593-0096
        Email: mdryovage@igc.org

Attorneys for Plaintiff, MARY ROSE DIEFENDERFER

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| MARY ROSE DIEFENDERFER, <br><br>              Plaintiff, <br><br>     v. <br><br> MARY E. PETERS, SECRETARY OF U.S. DEPARTMENT OF TRANSPORTATION, <br><br>              Defendant. | NO. <br><br> **COMPLAINT FOR DAMAGES AND OTHER RELIEF UNDER TITLE VII OF THE CIVIL RIGHTS ACT AND CIVIL SERVICE REFORM ACT** |

## JURY DEMAND

Plaintiff demands a jury for each such claim for which she is entitled to a jury.

## NATURE OF THE ACTION

1.       This is a proceeding for declaratory and injunctive relief against defendant MARY

E. PETERS, Secretary of the U.S. Department of Transportation, her predecessors,

successors, agents, servants, officers, and employees, to redress the deprivation of rights

COMPLAINT - Page 1

secured to the plaintiffs by Title VII of the Civil Rights Act of 1964; 42 U.S.C. Section 2000e *et seq*., as amended by the Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071 (1991) (Title VII); and the Civil Service Reform Act of 1978, 5 U.S.C. 1201 *et seq*. (CSRA) arising from the discrimination and retaliation practiced against Plaintiff MARY ROSE DIEFENDERFER because of her sex and because she engaged in repeated acts of whistleblowing about safety violations and other rule violations by the regulated carrier, Alaska Airlines (ASAA), for which she was responsible as a Principal Inspector for the Seattle Flight Standards District Office (FSDO) of the Federal Aviation Administration.

2.      Plaintiff seeks a declaratory judgment and injunction to restrain Defendant  from committing prohibited personnel practices, policies, customs and usages, from discriminating and retaliating against Plaintiff because of her sex, and/ because of her opposition to unlawful discrimination and retaliation.  Plaintiff seeks injunctive relief requiring Defendant to take affirmative and effective steps to remove and otherwise discipline managers who have violated the agency's policies and failed to meet their legal responsibility promptly to investigate complaints or to take effective action to stop and deter prohibited personnel practices against Plaintiff and who have failed to comply with Title VII, and CSRA.  Plaintiff seeks injunctive relief requiring the Defendant to reinstate her and to make her whole for the wages and benefits she lost as a result of Defendant's unrelenting practice of illegal action against her which ultimately and inexorably led to her constructive discharge, career loss, and emotional distress.

## JURISDICTION AND VENUE

3.     Jurisdiction of this Court is invokes pursuant to 28 U.S.C. Section 1331, 1337, 1343, 1346, 2344, and 2401(a). This is an action authorized and instituted pursuant to 5 U.S.C. Section 7703 of the Civil Service Reform Act, as amended, and Title VII of the Civil Right Act, as amended, 29 U.S.C. 2000(e), which grant district courts jurisdiction over actions alleging unlawful and discriminatory employment practices by federal agencies and provides for judicial review of cases involving sex and retaliation. The unlawful practices alleged in this complaint occurred at the Seattle Flights Standards District Office (FSDO), County of King, which is situated in the Western District of Washington.

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

**PARTIES**

4.      Plaintiff MARY ROSE DIEFENDERFER ("Diefenderfer") was employed by the U.S. Department of Transportation, Federal Aviation Administration ("FAA") from July 17, 1988 to November 16, 1999. Diefenderfer is a highly qualified and experienced commercial aviation expert, specializing in commercial transport flight operations, *i.e.*, all functions except maintenance and security. She is a former airline pilot with an Airline Transport Certificate, including two large aircraft type ratings (A-320 and DC-9).  These type ratings qualified her to fly as pilot in command on those transport category airplanes. She holds a Bachelor of Aeronautical Science and Master of Business Administration degrees.

Diefenderfer obtained her first pilot's license when she was 16 years old.  She earned a Bachelor of Science degree in 1976 from the premier aviation university, Embry Riddle Aeronautical University, where she also worked as a flight instructor.  In 1978, she became a professional airline pilot, working for Texas International Airlines, flying as First Officer on a DC-9. In 1982, Texas International merged with Continental Airlines, where she was employed as a pilot until 1985.

In 1988, she applied for and was hired by the FAA as an air carrier operations safety inspector. While in the FAA, she worked on various local and national projects and received promotions in three Regions: Kansas City Flight Standards District Office (FSDO), the Chicago O'Hare air carrier office, and the Seattle FSDO.  Diefenderfer won numerous FAA and industry recognitions, FAA promotions and awards, and above average and exceptional FAA performance evaluations.  She was also appointed as a FAA team leader on nationally recognized safety initiatives, such as the congressionally mandated Juneau Airport Safety Study, which set the standards for future nationwide air carrier implementation of Global Positioning navigation.

5.      Defendant MARY E. PETERS is the Secretary of the U.S. Department of Transportation and is sued in her official capacity as the head of an executive agency. As such, Defendant has the full responsibility for administration of all programs within the agency, including the employment policies and practices of the Department of Transportation in all regions and is in a position to create and implement a policy to eliminate and prevent any form of discrimination and retaliation and to provide complete

COMPLAINT - Page 3

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

1  relief for plaintiff.  The FAA is a part of the Department of Transportation. At all relevant

2  times, Defendant PETERS acted through her agents, officials, supervisors and managers at

3  the FAA.

## FACTUAL BACKGROUND

4

5  6.    In 1993, Diefenderfer transferred to the Seattle Flight Standards District Office

where she was assigned the position of Assistant Principal Operations Inspector ("Assistant

6  POI"or "APOI") for Alaska Airlines (ASAA)). The Principal Operations Inspector ("POI")

7  at the time, Robert Lloyd, complained about ASAA, noting that it reacted differently to FAA

8  inspectors than did other airlines that he had previously regulated – ASAA did not want to

9  hear about safety problems, and Lloyd's FAA managers approached their work with a sense

10 of camaraderie with the airline, seeking simply to make sure Alaska "was happy." Early in

1993, after his FAA supervisor told Lloyd to stop sending so many enforcement letters to

11 Alaska, Lloyd transferred out of the Seattle office. He transferred to the FAA Aircraft

12 Evaluation Group (AEG) in Seattle, leaving the POI position vacant. Diefenderfer bid for,

13 and was promoted into the job.

14 7.    With the exception of a two-month period, from May 1993 until June 1997,

15 Diefenderfer oversaw a team of inspectors who had oversight of ASAA.  Each had his or her

16 own area of expertise, and reported findings to Diefenderfer.  As POI, Diefenderfer was the

chief liaison between the FAA and Alaska Airlines, and primarily responsible for ensuring

17 its compliance with FAA safety regulations.

18 8.    From the early 1990's until the crash of Alaska Airlines Flight 261 in January 2000,

19 principal operations and maintenance inspectors assigned by FAA to oversee Alaska

20 Airlines identified and reported an increasing trend of significant and serious safety

21 violations, combined with an increasingly non-compliant attitude from ASAA. This trend

22 included knowingly making false statements about the conduct of airline programs and

employee training, falsification of pilot and training records, use of unapproved de-icing

23 fluids (vodka), forcing pilots to fly below legal weather minimums in hazardous terrain, and

24 encouraging pilots and mechanics not to record maintenance deficiencies.  For example, in

25 August 1993, Diefenderfer discovered the falsification of pilot training records by ASAA.

26 As a result of this discovery, Ms. Diefenderfer performed an investigation resulting in a

report to Civil Aviation Security.  Civil Aviation Security investigated and found cause.  In

COMPLAINT - Page 4

December 1993, a staff member from FAA Security verbally warned Ms. Diefenderfer that the FAA was displeased with her reporting of the records violation and planned to take adverse action against her.

9.      In March 1994, Ms. Diefenderfer was forcibly reassigned to perform staff work at a regional office.  As a result of this reassignment, Diefenderfer complained to the OSC, hired an attorney and pursued other administrative and collective bargaining agreement remedies. As a result of Ms. Diefenderfer's complaints, in May 1994 a three person investigation team was sent to the Seattle FSDO.  As a result of the investigations, Ms. Diefenderfer was returned to the Principal Operations Inspector position.  The Settlement Agreement provided that FAA would not transfer her in the future without her concurrence.

10.      Upon resuming her inspection duties, Diefenderfer continued to discover violations of the laws, rules and regulations committed by ASAA.  In an attempt to bring ASAA in conformity with the laws and regulations, Diefenderfer made appropriate reports and took appropriate actions against it.

11.      On or about August 1994, Diefenderfer learned that ASAA was complaining about her insistence that it comply with the law.  Among the violations discovered by Ms. Diefenderfer were training and operational violations, failure of pilots to write up mechanical discrepancies in aircraft log books, unapproved pilot training programs and check lists, failure to train pilots in global positioning system equipment and procedure, illegal departure procedures from Juneau airport, incorrect training for particular departures and unqualified captains on revenue flights.

12.      In late 1994, Ms. Diefenderfer learned that Alaska Airlines was requesting the removal of FAA inspectors who required strict compliance with the law.  Diefenderfer sought assistance from her superiors in bringing the airline into compliance with the law. However, not only was she not supported in her efforts, but several of her superiors sided with the violators in an effort to prevent her from safeguarding public safety through observance of regulations and laws.

13.      During the time Diefenderfer served as POI, Alaska Airlines grew rapidly, introducing new cockpit technologies, flying to new airports and countries including Russia, adapting new pilot training methods, and became the 10th largest air carrier in the country. Because of these rapid changes, Alaska Airlines' internal safety and regulatory compliance

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

problems grew.  Diefenderfer and her team encountered an increasing number of indicators that pointed to a degradation of safety at the airline. Some symptoms were the increasing number of violations of the crew training programs, failures of pilots to write up mechanical discrepancies, apparent falsification of pilot training records, and Alaska Airlines management's propensity falsely to accuse inspectors of wrongdoings, rather than to address their internal safety and regulatory failings.

14.    During 1995 and 1996, Diefenderfer experienced increased pressure from several of her superiors to cease her efforts to uphold the law and increased hostility from Alaska Airlines.   On or about November 1996, Ms. Diefenderfer's bid for Manager of the Seattle FSDO was denied.

15.    Diefenderfer and her team were routinely subjected to false accusations by the airline, presumably to deflect attention from the airline's deficiencies uncovered by the inspectors.   When Diefenderfer's team addressed the shortfalls, Alaska Airlines complained to FAA management which rebuked its inspectors.  ASAA became more blatant about its false complaints against inspectors, even to the point of forcing two management pilots to make false statements about an inspector in a sworn statement to FAA Security. Diefenderfer documented numerous incidents where FAA management pressured FAA inspectors to act contrary to laws, regulations, FAA Orders, and safety practices.

16.    Deferring to the airline, FAA management began punishing the inspectors.  For example, Diefenderfer's direct supervisor, Phil Hoy, told the inspectors that they were "too hard on Alaska and he felt compelled to stop that." When Diefenderfer requested more inspectors to handle the increasing work load, Hoy rebuffed the request, saying that if he hired more inspectors, they would only find more violations.  On one occasion, because Diefenderfer observed that Alaska's record-keeping was problematic, she tried to change the operations specifications for computerized record-keeping, but was prevented from doing so by Hoy.

17.    As she continued to pursue Alaska's compliance with safety regulations, Diefenderfer's relationship with Hoy continued to deteriorate. He took action that undermined Diefenderfer's authority and otherwise to demean her.  He began to criticize her and restrict her activities.   He left a brochure on her desk implying that she was a "barbarian" and unduly criticized her for advising him of safety and other issues.

COMPLAINT - Page 6

18.    In May 1996, the problematic supervisory relationship worsened when one of Diefenderfer's team, FAA inspector Jewett Gibson was denied access to the cockpit by an Alaska gate agent and Phil Hoy disciplined Gibson. Faced with continuing degradation of the safety culture at Alaska and interference from her FAA supervisor, Diefenderfer filed a Hotline complaint in 1996. FAA management was aware of her whistleblowing activity.

19.    Alaska Airlines made attempts to remove inspector Gibson for his efforts to bring Alaska Airlines into compliance with the law.

20.    In March 1997, Defendant appointed Marlene Livack as Manager of the Seattle FSDO. Livack had been sent to Seattle FSDO to remove Diefenderfer from the POI position in order to appease Alaska Airlines in their requests for less strict inspections.

21.    In April 1997, a former Vice President of Alaska Airlines, Tom Cufley, informed Diefenderfer that he had received a petition from Alaska Airlines requesting the removal of Diefenderfer.

22.    That same month, the Seattle FSDO inspectors were told by their supervisor not to insist on safety compliance from Alaska Airlines or he would take adverse action against them.

23.    On April 15, 1997, Diefenderfer was told by her manager and supervisor, Ms. Livack and Mr. Hoy, that she was a problematic employee because she insisted on strict compliance with the laws and that she needed to "take it easy" on Alaska Airlines.

24.    During this time period, Alaska Airlines put increased pressure on Ms. Diefenderfer through her superiors. In April 1997, Ms. Livack placed the inspectors into facilitated meetings to persuade them that Alaska Airlines was their "customer" rather than the flying public.

25.    In May 1997, another member of Diefenderfer's team, inspector Steve Franklin was told by the FAA to drop violations against Alaska Airlines regarding unsafe revenue flights. Also, in May 1997, Diefenderfer and her inspection team were required to tell Alaska Airlines about an ongoing investigation of unlawful activities and to provide Alaska Airlines the opportunity to investigate its own violation.

26.    On May 12, 1997, Diefenderfer was told by Livack that she will never be promoted to management.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

27.     On May 13, 1997, Livack and Hoy told Diefenderfer that they did not approve of her discovering violations on Alaska Airlines because it adversely affected Alaska Airlines's business.

28.     On May 15, 1997, Diefenderfer and other inspectors informed the Office of Inspector General that Alaska Airlines may have falsified records.

29.     On May 16, 1997, Livack gave Diefenderfer a written memorandum criticizing her performance.  During this time period, her supervisors seized upon the on-going facilitated meetings as a vehicle for intense harassment of Diefenderfer.

30.     On June 6, 1997, Diefenderfer was asked by FAA headquarters to revoke Alaska Airlines departures from Reno until its pilots were up to the legal training standards. Diefenderfer's supervisors in FSDO forbade her from communicating this information to Alaska Airlines.

31.     On June 25, 1997, Diefenderfer and Franklin spoke with FAA Security and confirmed that Alaska Airlines had falsified records for the second time.

32.     On June 26, 1997, Hoy informed Diefenderfer that she was no longer the Principal Operations Inspector for Alaska Airlines and would be immediately removed to the Regional Office.  Hoy stated that she was being removed because, *inter alia*, she "caused too much trouble."  A male principal inspector who had also raised safety concerns about ASAA was permitted to retain his Principal Inspector position.

33.     Although in July 1997, Diefenderfer applied for her POI position, Defendant filled it with a lesser qualified male.  Males have held the POI position at FSDO ever since that time.

34.     After Diefenderfer was reassigned to the Regional Office, there was no desk for her because the Region was staffed to capacity.  Having no desk and no easy access to the regulatory library adversely impacted her ability to perform her job.

35.     After her reassignment from the POI position, Diefenderfer applied for, but did not get vacant positions for APOI, Aviation Safety Inspector in the Data Evaluation Program (DEPM), and assistant aircrew program manager (AAPM).  Defendant filled each position with a lesser qualified male.

36.     Diefenderfer continued to file hotline complaints because she believed that the airline was headed for a disaster and that FSDO management was complicit.

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

37.    In August 1997, Diefenderfer was detailed to the Certification Surveillance and Evaluation Team (CSET) to which, through the bid process, she had hoped to transfer. Diefenderfer was told that she could not visit the Seattle FSDO, although she was a government employee and the FSDO was in the same building as CSET.  This restriction negatively impacted her work, performance, and future job transfers and promotion potential. No other FAA employee was so restricted.

38.    Despite the fact that she no longer supervised Diefenderfer, Marlene Livack continued to seek reprisal against Diefenderfer.  Livack asked Diefenderfer's supervisor to punish her and disparaged her to him, which was significant because he was one of the CSET hiring officials to whom Diefenderfer had expressed interest in a position on the CSET team. Eventually, Diefenderfer's supervisor determined that he did not want to hire her in CSET due to her "problems" with the FSDO, brought on by Marlene Livack, and others.

39.    On September 9, 1997, Diefenderfer filed an EEO complaint alleging sex discrimination and reprisal in both the removal from her POI position and in her treatment by Defendant with respect to performance evaluations, awards, and standards of conduct.

40.    In late 1997, Diefenderfer bid on a position with Defendant's Aircraft Evaluation Group (AEG).  The AEG job was of interest to Diefenderfer because she had worked with AEG in the past and the position would extricate her from the hostile environment at FSDO. Although Diefenderfer was well qualified for the position, Defendant hired two males, rather than Diefenderfer, ostensibly because she had not flown as a captain on large transport aircraft for an airline.  The AEG position was a non-flying position for which a number of FAA employees who had not flown as a captain on large transport aircraft had been previously selected.

41.    By mid-1998, Diefenderfer had filed more than 14 whistle-blowing complaints. On February 27, 1998, Diefenderfer filed a Complaint against the FAA with the Office of Special Counsel ("OSC").  The OSC responded on April 21, 1998, stating that it did not have jurisdiction to investigate the Complaint.  On June 24, 1998, Ms. Diefenderfer filed an appeal of the OSC's decision with the Merit Systems Protection Board (MSPB).    The MSPB ruled that it did not have jurisdiction to hear violations FAA whistleblower claims. Ultimately, she pursued these issues and the resulting retaliation to the federal appeals court

COMPLAINT - Page 9

which ruled that FAA employees had no whistleblowing protection. *Diefenderfer v. MSPB*, 194 F.3d.1275 (Fed. Cir. 1999).

42.    Another AEG vacancy occurred in 1998, for which Diefenderfer applied. Saying that she was well qualified for an AEG position, Defendant, through her Regional Manager Brad Pearson, offered her a position in the AEG if she would drop her legal claims against the FAA. After she turned down the offer, Defendant transferred two lesser qualified males to the AEG.

43.    In July 1998, Diefenderfer had filed an occupational disease claim requesting leave with pay based on the stress that had been escalating since her discriminatory and retaliatory treatment in her POI position. The paid medical leave was denied.

44.    In September 1998, Defendant issued a job announcement for an Aviation Safety Inspector in the Data Evaluation Program (DEPM) in the Alaska Airlines Certificate Management Office. Diefenderfer applied for the position. However, Defendant selected a male for the position, and on March 6, 1999, Complainant filed another EEO complaint.

45.    On December 16, 1998, Defendant put out a bid for four positions with the Air Transportation Oversight System (ATOS), which evaluates the effectiveness of airline operations. Well qualified for such a position, Diefenderfer bid for a position. At the end of March 1999, Diefenderfer learned that she had not been selected for the position, despite her superior qualifications to those selected.

46.    In March 1999, Defendant assigned Diefenderfer a new supervisor, Michael Kelly, who was to finish the task that Ms. Livack had failed to complete – that of ridding the FAA of Ms. Diefenderfer. Kelly had been criminally convicted of assault on his two teenage daughters and was widely-known to verbally abuse employees whom he supervised. The inspector who ultimately had replaced Diefenderfer as POI at Alaska Airlines, who had been Kelly's subordinate, posted Kelly's bail of $10,000. Despite his criminal history, shortly after Kelly was released from jail, FAA not only promoted him to a supervisory position, but also continued his government security clearance. Kelly immediately displayed hostile and abusive behavior towards Diefenderfer.

47.    On March 22, 1999, Kelly issued a letter of reprimand (LOR) to Diefenderfer – the first such discipline in her otherwise unblemished career. In part, the reprimand was based

COMPLAINT - Page 10

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

upon Diefenderfer's cooperation with reporters for Seattle newspapers who wrote articles criticizing the FAA and ASAA.

48.     On March 24, 1999, Diefenderfer received notice that she was being restricted from all of the Agency's national databases.

49.     Diefenderfer's stress level continued to escalate. She was getting repeatedly turned down for bids on jobs awarded to lesser qualified males and facing continued hostility from Defendant.  She was exhibiting intense emotional distress which her doctor diagnosed as work-related.

50.     Diefenderfer's physician advised her that she could not recover under the stress that she was experiencing and that she needed to get away so she could improve her mental state and recover the medical certificate she required to maintain currency of her pilot license.

51.     Diefenderfer applied for a six-month leave without pay (LWOP), which although initially denied by Defendant, was finally approved.

52.     On June 10, 1999, Diefenderfer applied for one of ten open positions with CSET. Despite her impressive qualifications, Diefenderfer was not selected for any of the ten openings.  Lesser qualified male employees were selected.

53.     On August 6, 1999, Diefenderfer sought reinstatement of a medical certificate permitting her to fly airplanes. Around the second week of August 1997, Defendant's Regional Flight Surgeon, Dr. Jones informed Diefenderfer that her medical certificate would be reinstated.

54.     Although there was no legitimate job-related reason that he be notified, Mike Kelly had asked the Flight Surgeon's Office to notify him immediately if and when Diefenderfer's medical certificate was renewed.  Consequently, Kelly was informed that a medical certificate would be sent to Diefenderfer.

55.     Immediately upon learned that she had regained her medical certificate, on August 27, 1999, almost a full month before her LWOP was scheduled to end, Defendant ordered Diefenderfer back to work. When Diefenderfer and her doctor indicated that she was not medically able to return to work, Defendant put Diefenderfer on AWOL status.

56.     Defendant then seized on yet another way of retaliating against Diefenderfer, arranging to cancel the medical certificate that she had worked so hard to get reinstated so

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

that she would have access to a wider range of jobs away from the FAA's Northwest Regional Office.

57.    Diefenderfer's subsequent request that Defendant reinstate her LWOP was denied. On September 14, 1999, the FAA then notified Diefenderfer that it was planning to suspend her for 14 days.

58.    Diefenderfer grieved the decisions on AWOL, the refusal to reinstate her LWOP, and the proposed suspension.  At the grievance meeting, Defendant ordered Diefenderfer to submit to two psychological examinations.

59.    In October 1999, Diefenderfer filed another EEO complaint, alleging sex discrimination and reprisal in the decisions related to LWOP, AWOL and the suspension proposal.  Earlier, in August and November 1999, Diefenderfer had filed EEO complaints alleging retaliation about the database restriction, and sex discrimination and reprisal in her CSET non-selection, respectively.

60.    Diefenderfer's subsequent requests for intervention from human resources or for ADA accommodation, FMLA leave, and medical retirement were denied. Unable to withstand Defendant's continued abuse, Diefenderfer was forced to leave the Agency on November 16, 1999.

61.    Since that time, she has been unable to find comparable employment, and has suffered, and continues to suffer, sever economic and emotional distress damage.   On information and belief, Defendant, through her agents, officials, supervisors and managers, has blacklisted Plaintiff and interfered with her ability to regain employment.

## EXHAUSTION OF REMEDIES

62.    On July 7, 1997, Plaintiff filed a complaint with the Office of Special Counsel (OSC) regarding her reassignment from her position as Principal Operations Inspector.  On April 21, 1998, the OSC declined to accept Ms. Diefenderfer's complaint due to a lack of jurisdiction.

63.    Diefenderfer filed an IRA appeal to the MSPB and ultimately to the U.S. Court of Appeals for the Federal Circuit which affirmed the OSC's decision not to consider her complaint. *Diefenderfer v. Merit Systems Protection Board*, 194 F.3d 1275, 1277 (Fed. Cir. 1999). Shortly thereafter, however, Congress passed and the President signed into law the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century, Pub. L. No. 106-

COMPLAINT - Page 12

181, 114 Stat. 61 (2000) retroactively granting FAA personnel appeal rights to the MSPB for whistleblower complaints.

64.    On May 5, 2000, Diefenderfer timely re-filed her whistleblower complaints with the Office of Special Counsel (OSC) and requested that it consolidate the EEO and whistleblowing matters for investigation by the OSC.  On October 24, 2000, the OSC accepted jurisdiction, as requested.

65.    Defendant moved to dismiss Diefenderfer's EEO complaints.  On September 18, 2000, the EEOC Judge dismissed the EEO charges without prejudice, noting that the Defendant should hold the complaints in abeyance until the MSPB determined its jurisdiction.

66.    On June 19, 2002, after holding Diefenderfer's complaint in abeyance for almost two years, the Defendant's Office of Civil Rights dismissed her eight separate EEO complaints of employment discrimination.

67.    On July 15, 2002, Complainant filed a timely appeal with the EEOC's Office of Federal Operations (OFO), which, on October 23, 2003, decided that the consolidated EEO complaints would be held in abeyance pending the outcome of the MSPB's determination of its jurisdiction over complainant's whistleblower and discrimination claims.

68.     On March 31, 2003, the OSC notified Diefenderfer that it was closing its inquiry and advising her that she had the right to seek corrective action from the MSPB.

69.    On May 29, 2003, Diefenderfer filed a timely appeal with the MSPB.  On June 24, 2003, the MSPB suspended the appeal for one month, and on July 24, 2003, for another month.

70.    On August 20, 2003, Defendant filed a Motion to Dismiss the MSPB case.

71.    On September 26, 2003, the MSPB assigned its case to a different Administrative Judge who ordered Diefenderfer to submit a statement proving MSPB jurisdiction and setting a status conference for October 15, 2003.  The MSPB took no further action until July 14, 2004, when the Administrative Judge issued an Order setting a hearing for September 7, 2004, and ordering pre-hearing submissions by August 27, 2004.

72.    The MSPB subsequently closed its offices in Seattle and the assigned Administrative Judge was relocated to Texas.  The hearing and discovery was stayed indefinitely.

73.    On February 14, 2005, the parties were notified that a new Administrative Judge,

COMPLAINT - Page 13

Jeremiah Cassidy, had been assigned.

74.    On October 12, 2005, MSPB Judge Cassidy issued an order declining jurisdiction over Plaintiff's EEO complaints. Accordingly, Diefenderfer asked the EEOC to recommence processing of her EEO complaints.

75.    The MSPB hearings began on June 27, 2005, continued sporadically for 35 days over the course of a year, and concluded June 29, 2006.

76.    On May 29, 2006, Diefenderfer filed a motion with the EEOC requesting that the EEOC proceedings be stayed pending conclusion of the MSPB hearings. Defendant opposed the motion.  The EEOC Judge granted the stay.

77.    The EEOC hearings were held March 19 – 28, 2007.

78.    On July 23, 2007, more than one year after the MSPB hearings concluded, the MSPB Judge entered his decision dismissing Diefenderfer's MSPB case.  Diefenderfer filed a timely appeal.

79.    On March 6, 2008, the EEO Judge rendered her initial decision dismissing Diefenderfer's EEO complaints.

80.    On April 7, 2008, Defendant issued its final order in the EEO case and provided notice of Plaintiff's right to sue in District Court within 90 days of receipt of the final order of the FAA. *See Exhibit A.*

81.    On May 13, 2008, the MSPB affirmed in part and reversed in part Judge Cassidy's decision. *Diefenderfer v. Department of Transportation*, 2008 MSPB 105.

82.    Eleven years have passed, at enormous expense to Plaintiff for pursuing her statutory rights and still there is no finality to Plaintiff's right to whistleblowing protection.

83.    Plaintiff is expressly authorized to bring this action by 5 U.S.C. Section 7703(a)(2) of the Civil Service Reform Act and Section 717(c ) of Title VII, 42 U.S.C. Section 2000e-16(c ) of the Civil Rights Act of 1964 and 5 C.F.R. 1614.310. Pursuant to 29 U.S.C. 791, this Court has jurisdiction over Plaintiff's claims.

84.    Defendant's actions herein were prompted by more than one discriminatory motive: to discriminate against her because of her sex, and/or to retaliate against her for her EEO and/or whistleblowing activities.

85.    Plaintiff has suffered and will continue to suffer irreparable injury and monetary damages as a result of Defendant's prohibited personnel practices and discriminatory and/or

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

retaliatory acts, unless and until the Court grants relief.

## STATEMENT OF CLAIMS

## FIRST CLAIM

### SEX DISCRIMINATION

86.    Paragraphs 1 through 85 above are hereby incorporated by reference as though fully set forth in this claim.

87.    Plaintiff is a member of a protected group based on her sex (female), and was qualified for her position, and for those for which she applied, at all times material hereto.

88.    Defendant Secretary of Transportation, through her agents, officials, supervisors and managers, has unlawfully discriminated against Plaintiff based on her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 *et seq*. as amended, by the following acts:

> a.  Removing her from her POI position;
>
> b.  Treating her less favorably than men regarding awards, recognition, training and other benefits;
>
> c.  Failing to re-hire her for the POI position;
>
> d.  Failing to select her for the APOI position;
>
> e.  Failing to select her for the AAPM position;
>
> f.  Failing to select her for a CSET position;
>
> g.  Failing to select her for an AEG position;
>
> h.  Failing to select her for the DEPM position;
>
> i.  Failing to select her for the ATOS position;
>
> j.  Issuing her a letter of reprimand;
>
> k.  Restricting her access to databases;
>
> l.  Restricting her access to buildings, and
>
> m.  Engaging in a pattern and practice of denying female employees promotions and other employment opportunities on the basis of their sex, in violation of Title VII.

89.    Defendant, through her agents, officials, supervisors and managers, treated Plaintiff less favorably than similarly situated males.

90.    Defendant, through her agents, officials, supervisors and managers, discriminated

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

against Plaintiff based on her sex, in violation of Title VII, in terms and conditions of employment, including but not limited to, taking away duties, denying her training, higher level assignments, opportunities and promotions. Similarly situated male employees were provided assignments to details, training, higher level assignments, and other employment opportunities on an on-going basis.

91.     Defendant, through her agents, officials, supervisors and managers, gave pretextual reasons for adverse treatment received by Plaintiff.

92.     Defendant, through her agents, officials, supervisors and managers, has a pattern and practice of denying female employees assignments, promotions, and other employment opportunities on the basis of sex, in violation of Title VII.

93.     Defendant, through her agents, officials, supervisors and managers, subjected Plaintiff to intolerable working conditions.

94.     Defendant, through her agents, officials, supervisors and managers, has a pattern and practice of failing to prevent supervisors and managers from creating a hostile work environment and harassing employees based on their sex, in violation of Title VII.

95.     Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's discriminatory practices unless and until the Court grants relief.

## SECOND CLAIM

## RETALIATION FOR EEO ACTIVITY

96.     Paragraphs 1 through 95 above are hereby incorporated by reference as though fully set forth in this claim.

90.     Defendant Secretary of Transportation, through her agents, officials, supervisors and managers, has unlawfully retaliated against Plaintiff based on protected activity in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-16 et seq. as amended, by taking the following acts:

        a.   Treating her less favorably than men regarding awards and other benefits;

        b.   Failing to re-hire her for the POI position;

        c.   Failing to select her for the APOI position;

        d.   Failing to select her for the AAPM position;

        e.   Failing to select her for a CSET position;

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086  FAX 206.233.9165

f.  Failing to select her for an AEG position;

g.  Failing to select her for the DEPM position;

h.  Failing to select her for the ATOS position;

i.  Denying her paid medical leave;

j.  Issuing her a letter of reprimand;

k.  Restricting her access to databases;

l.  Restricting her access to buildings;

m.  Revoking her LWOP;

n.  Designating her as AWOL;

o.  Proposing to suspend her;

p.  Denying her requests for ADA accommodation, FMLA leave and medical retirement;

q.  Revoking her medical certificate;

r.  Compelling her to undergo a psychiatric examination;

s.  Constructively discharging her;

t.  Engaging in other actions intended to discourage plaintiff and other employees from complaining about unlawful conduct on the part of FAA managers.

91.    Plaintiff filed timely charges of discrimination in violation of Title VII on September 9, 1997, March 3, 1999, August 10, 1999, October 6, 1999, and November 15, 1999.

92.    At all times on or after September, 1997, Defendant, her agents, officials, supervisors and managers, were aware, or should have been aware, of Plaintiff's opposition to illegal practices and other activity protected by Title VII.

93.    After each of the aforesaid charges was filed, Defendant, through her agents, officials, supervisors and managers, engaged in adverse employment actions and other retaliatory actions against Plaintiff.

94.    Defendant has a pattern and practice of denying employees who engage in protected activities assignments, promotions, benefits and other employment opportunities in reprisal, in violation of Title VII of the Civil Rights Act.

COMPLAINT - Page 17

95.   Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of defendant's retaliatory practices unless and until the Court grants relief.

### THIRD CLAIM

**UNLAWFUL DISCRIMINATION BASED ON THE
CIVIL SERVICE REFORM ACT, AS AMENDED BY
THE WHISTLEBLOWER PROTECTION ACT**

96.   Paragraphs 1 through 95 above are hereby incorporated by reference as though fully set forth in this claim.

97.   Defendant has unlawfully violated plaintiff's rights under the Civil Service Reform Act, as amended by the Whistleblower Protection Act, 5 U.S.C. 2301, *et seq.* by taking the following covered personnel actions in retaliation for her protected activity:

   a.   Reassignment on June 26, 1997, from the position of Principal Operations Inspector (POI);

   b.   Denial of training;

   c.   Denial of transfer to CSET;

   d.   Denial of transfer to AEG position;

   e.   Order to drop an investigation;

   f.   Restrictions from contacting Alaska Airlines regarding safety violations;

   g.   Significant changes to Plaintiff's duties, such as restrictions on access to agency databases, exclusion from the building;

   h.   Non-selections for numerous positions;

   i.   Issuance of a reprimand;

   j.   Revocations of her medical certifications;

   k.   Suspension;

   l.   Order to undergo psychiatric evaluation, and

   m.   Constructive discharge.

98.   Plaintiff made one or more protected disclosure(s) regarding the FAA's safety inspection practices with respect to Alaska Airlines.

99.   Plaintiff exhausted her OSC remedies prior to filing a timely appeal with the MSPB and over 120 days has elapsed since the filing of that appeal.  Eleven years have passed

COMPLAINT - Page 18

1  since Plaintiff first filed her complaint with the OSC and no final adjudication of her claims

2  has yet been made.

3  100.    Title 29 U.S.C. § 1614.310 provides that "An individual who has a complaint

4  processed pursuant to 5 CFR part 1201, subpart E or this subpart is authorized by 5 U.S.C.

5  7702 to file a civil action in an appropriate United States District Court… after 120 days

6  from the date of filing an appeal with the MSPB if the MSPB has not yet made a decision."

7  Therefore, Plaintiff has fully exhausted administrative procedures prior to bringing this

   action.

8  101.    Plaintiff's protected disclosures were a contributing factor in the Defendant's

9  decisions to take prohibited personnel actions against her.

10 102.    Title 5 U.S.C. § 2302 of the Whistleblower Protection Act provides that a "personnel

   action" includes a "significant change in duties, responsibilities, or working conditions." 5

11 U.S.C. § 2302(a)(2)(A)(xi).

12 103.    At all times material to this action, prior to taking the personnel actions, Defendant,

13 through her agents, officials, supervisors and managers, were aware, or should have been

14 aware, of Plaintiff 's protected activity.

15 104.    Defendant, her agents, officials, supervisors and managers, maintain a pattern and

16 practice of taking adverse personnel actions against whistleblowers employed by the Federal

17 Aviation Administration, in reprisal for whistleblowing activities.

18 105.    Plaintiff is now suffering and will continue to suffer irreparable injury and monetary

   damages as a result of Defendant's retaliatory practices unless and until the Court grants

19 relief.

20              **PRAYER FOR RELIEF**

21      WHEREFORE, Plaintiff respectfully requests that this Court rule and order relief:

22 1.     Enter a judgment declaring that the acts, policies and practices of the

   Defendant are in violation of the laws of the United States.

23
24 2.     Issue a permanent injunction:

           a.     Requiring Defendant to abolish discrimination and reprisal;

25         b.     Requiring Defendant to cease and desist from any employment

26 practice which discriminates against plaintiff or others on the basis of sex, or which

   retaliates against persons because they have complained about such discrimination;

COMPLAINT - Page 19

c.     Requiring allocation of significant funding and trained staff to implement all changes within two years;

d.     Requiring removal or demotion of all managers who have violated the agency's policies and failed to meet their legal responsibility to promptly investigate complaints or to take effective action to stop and deter prohibited personnel practices against employees;

e.     Establishing and strictly measuring EEO compliance as a critical element in every manager's performance standards;

f.     Creating a process for the prompt investigation of harassment and reprisal complaints separate from the agency's process;

g.     Requiring mandatory and effective training for all employees and managers on discrimination and retaliation issues, investigations and appropriate corrective actions; and

h.     Requiring defendant to make Plaintiff whole with respect to prospective and retroactive compensation, including pre- and post-judgment interest.

3.     For such damages, including back pay, front pay and benefits, to which plaintiff is entitled under Title VII, and in amounts to be proven at trial, including pre- and postjudgment interest as appropriate;

4.     For other and further damages, including compensatory damages for plaintiff's emotional distress, as may be proven at trial;

5.     For an award of costs of suit including reasonable attorney's fees and expenses; and

6.     For such other and further relief as the Court may consider just and proper.


DATED: June 19, 2008

LAW OFFICES OF JUDITH
A. LONNQUIST, P.S.


____/s/ Judith A. Lonnquist_____
Judith A. Lonnquist, WSBA # 06421

LAW OFFICES OF
JUDITH A. LONNQUIST, P.S.
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

LAW OFFICES OF MARY DRYOVAGE

_____/s/ Mary Dryovage_____
Mary Dryovage, CBA # 112551

Attorneys for Plaintiff

COMPLAINT - Page 21

1

2

3                          UNITED STATES DISTRICT COURT
                  FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

4

5
      MARY ROSE DIEFENDERFER,
6
                          Plaintiff,
7                                                        NO.

8             v.

9      MARY E. PETERS, SECRETARY OF U.S.          **CERTIFICATE OF SERVICE**
       DEPARTMENT OF TRANSPORTATION,
10
                          Defendant.
11

12            On June 19, 2008, I served the within COMPLAINT, SUMMONS, CIVIL COVER
      SHEET, on the parties in said action by MAILING a true copy thereof enclosed in a sealed
13    envelope, first class postage fully prepaid to the following address:

14
      MARY E. PETERS, SECRETARY
15    U.S. DEPARTMENT OF TRANSPORTATION
      1200 New Jersey Avenue SE
16    Washington DC  20590                     Certified Mail No. 7003 2260 00064345 1436

17    Associate Director
18    Compliance Operations Division, S-34
      Departmental Office of Civil Rights
19    U.S. Department of Transportation
      1200 New Jersey Avenue SE, W76-401
20    Washington DC  20590                     Certified Mail No. 7003 2260 000643451443

21    Jerry Mellody
22    Assistant Chief Counsel
      Personnel and Labor Law Staff, AGC-30
23    Office of Chief Counsel
      Federal Aviation Administration
24    800 Independence Ave. SW
      Washington, D.C. 20591                    Certified Mail No. 7003 2260 000643451450
25

26

COMPLAINT - Page 22

LAW OFFICES OF
**JUDITH A. LONNQUIST, P.S.**
1218 THIRD AVENUE, SUITE 1500
SEATTLE, WA 98101-3021
TEL 206.622.2086   FAX 206.233.9165

1  U. S. ATTORNEY GENERAL,
   U.S. DEPARTMENT OF JUSTICE,
2  Main Building, Room 51
3  10th and Constitution Ave. N.W.
   Washington, D.C. 20530                    Certified Mail No.  7003 2260 000643451467
4
   U.S. Attorney's Office, Civil Division
5  700 Stewart Street, Suite 5220.
   Seattle, WASHINGTON 98101-1271            Via Legal Messenger
6
7          I declare under penalty of perjury that the foregoing is true and correct and was
8  executed on June 19, 2008 at Seattle, WASHINGTON.
9
10                                            _____/s/ Judith A. Lonnquist_____
11                                            Judith A. Lonnquist, WSBA #06421
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

COMPLAINT - Page 23